IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

TOM WILLIS and CAROL WILLIS,

Plaintiffs,

vs.

WESTERN NATIONAL MUTUAL INSURANCE COMPANY,

Defendant.

CV 24-79-BLG-TJC

**ORDER**

Plaintiffs Tom and Carol Willis (collectively, "Willis") originally filed this action in the Montana Thirteenth Judicial District Court, Yellowstone County on June 7, 2022. (Doc. 3.) Two years later, Willis filed an amended complaint on June 5, 2024 (Doc. 4), and then served Defendant Western National Mutual Insurance Company ("Western National") on June 7, 2024 (Doc. 1 at 2). Western National timely removed the action to this Court, invoking the Court's diversity jurisdiction under 28 U.S.C. § 1332(a). (Doc. 1.)

Pending before the Court are: (1) Willis's motion for partial summary judgment on Western National's reasonable basis affirmative defense (Doc. 25); (2) Western National's cross-motion for partial summary judgment on its reasonable basis affirmative defense (Doc. 33); and (3) Western National's motion for summary judgment on all claims (Doc. 36). The motions are fully briefed and

ripe for the Court's review. (*See* Docs. 26, 27, 28, 34, 35, 37, 47, 48, 49, 57, 58.)

Having reviewed the parties' filings, the Court finds Willis's motion (Doc. 25) should be **GRANTED**, Western National's cross-motion (Doc. 33) should be **DENIED**, and Western National's motion for summary judgment on all claims (Doc. 36) should be **DENIED**.

## I. FACTUAL BACKGROUND[1]

This case stems from a motor vehicle accident involving Tom Willis ("Tom") and Clifton Oppegaard ("Oppegaard") that occurred at a four-way intersection on August 12, 2019. Tom was traveling north, approaching a flashing yellow light at the southern entrance of the intersection. Oppegaard was traveling east, approaching a stop sign at the western entrance of the intersection. Oppegaard drove through the stop sign and into the intersection at approximately 50 miles per hour. Tom and Oppegaard collided at a 90-degree angle, with Tom's truck striking the rear right panel of Oppegaard's truck. At the time of the accident, Oppegaard was insured by Western National with policies that provided up to $2 million in liability coverage.

Tom was injured in the crash. He started incurring medical expenses immediately, beginning with his transport by ambulance from the scene of the

[1] The background facts set forth here are taken from the parties' submissions and are undisputed except where indicated.

accident. On September 4, 2019, Willis, through their attorney Randy Nelson ("Nelson"), made a demand on Western National for advance payment of Tom's medical bills pursuant to *Ridley v. Guaranty National Insurance Company*, 951 P.2d 987 (Mont. 1997). By September 11, 2019, Western National had determined that Oppegaard's liability for the accident was reasonably clear.

Initially, most medical providers sent bills to Willis, which were then submitted by Nelson to Western National. Beginning in 2020, medical providers also submitted bills directly to Western National. On January 28, 2020, Nelson submitted past due medical bills to Western National for payment, including a bill from AMR Ambulance Service (the "ambulance bill") related to Tom's transport from the scene of the accident.

Tom was 69 years old at the time of the accident and on Medicare. A portion of Tom's accident-related medical expenses were also paid by Medicare. At least some of these payments were paid conditionally. That is, they were paid by Medicare conditioned upon reimbursement when a primary insurer paid the expense.

Willis also submitted a claim for medical payments coverage to their first-party insurer, Kemper Services Group ("Kemper"). On April 15, 2020, Willis received a $5,000 payout from Kemper, representing Willis's coverage limits under the policy. Kemper notified the Centers for Medicare & Medicaid Services

("CMS") of this payment.

On July 20, 2020, CMS issued Willis a conditional payment notice, confirming that Medicare had paid certain medical expenses, including the ambulance bill. The claim number listed on the CMS notice was Willis's claim number with Kemper, and the notice indicated that CMS had been notified that Willis received a payment of $5,000 on April 15, 2020, relating to the August 12, 2019, accident. The notice stated that Medicare had made a conditional payment in the amount of $587.35 which would become subject to a demand letter if not repaid by August 19, 2020.

Nelson sent the CMS notice to Western National on July 24, 2020. In response, Western National's claims adjuster emailed Nelson that he had "not heard about reimbursing Medicare pre-settlement," but that he would look into the matter. (Doc. 26-11.) The adjuster indicated Western National's position was that, for a third-party claim such as Willis's, reimbursement of Medicare would be handled following judgment or settlement of the claim. The adjuster also told Nelson that the CMS notice related to Willis's first-party claim with Kemper.

On October 19, 2020, Willis, through Nelson, demanded Western National pay $1.42 million in exchange for release of their claims against Oppegaard. On December 9, 2020, Western National provided a counter-offer of $125,000 in "new money," in addition to approximately $55,000 it had already advance paid for

Tom's medical expenses. Nelson did not propose a counter-offer. Instead, he threatened to sue Oppegaard to recover Willis's damages, and to sue Western National for violating Montana's Unfair Trade Practices Act ("UTPA").

On December 7, 2020, CMS issued a notice of intent to refer the debt on the conditional payments to the Department of the Treasury, identifying offset payments related to the ambulance bill and three other medical bills. Nelson submitted this notice to Western National on December 10, 2020, and threatened to file suit against Western National if it did not immediately pay the bills. Western National's claims adjuster responded to Nelson that same day, questioning Western National's obligation to pay the bills. The adjuster reiterated his position from July 2020 that Medicare is typically reimbursed after settlement, and that he would again "look into the Medicare reimbursement rule." (Doc. 26-15 at 1.) He also stated that he knew "of no authority requiring third party insurance to reimburse conditional payments in advance of settlement unless ORM [ongoing responsibility for medical expenses] is acknowledged[,]" and that "[i]f these were submitted directly to Medicare and not [Western National], it may be the correct way to reimburse is to pay the provider who then reimburses Medicare." (*Id.*)

Willis filed suit against Oppegaard and Western National in state court on December 21, 2020. Willis sought damages for Oppegaard's negligence, as well as declaratory judgment requiring Western National to advance pay all medical

bills stemming from the accident, including the CMS conditional payments.

On February 11, 2021, Tom received notice from the Department of the Treasury that non-payment of his debt—at the time $610.75 due to accumulated interest—could result in garnishment or withholding of federal and/or state payments to which he was entitled. In 2021, Tom's social security benefits were reduced by a garnishment of $630.76.

On March 16, 2021, Willis moved for partial summary judgment on the issue of liability for the accident, seeking dismissal of Oppegaard's affirmative defense of comparative fault. Oppegaard opposed the motion, arguing that Tom failed to proceed with caution through the intersection.

On March 31, 2021, Willis also filed a motion for partial summary judgment regarding Western Nationals' obligation for *Ridley* payments. Accompanying the motion, Willis filed the ambulance bill and the February 11, 2021, notice from the Department of the Treasury as exhibits.

Western National's response brief argued summary judgment should be denied, concluding "[i]t is undisputed that *all* of the medical bills for which plaintiffs seek payment have already been paid, and the Willis' [sic] will never be called upon to pay them. As such, the concerns which gave rise to the advance pay rule in *Ridley* simply do not apply, and advance payments are neither necessary or appropriate." (Doc. 26-16 at 9) (emphasis in original).

On June 22, 2021, Montana District Court Judge Ashley Harada issued an order on the *Ridley* payments question, granting partial summary judgment in favor of Willis. Judge Harada's order concluded "*Ridley's* advance pay requirement applies to the facts in this case. Plaintiffs should not be placed in a situation where their social security checks are being garnished and there is financial stress or duress while this matter is being resolved." (Doc. 26-6 at 4.)

Willis filed a motion seeking certification of the *Ridley* order pursuant to Montana Rule of Civil Procedure 54(b). On December 30, 2021, judgment was entered on the *Ridley* order.

In the meantime, Judge Harada denied Willis's summary judgment motion on Oppegaard's comparative fault affirmative defense on September 8, 2021. Her order stated that "[d]ue to the interplay between the comparative fault statute and the duties each driver had under the traffic code, there exists the possibility a jury could find either party fully or partially at fault for the accident." *Willis v. W. Nat'l Mut. Ins. Co.*, 2021 WL 11586019, at *2 (Mont. Dist. Ct. Sep. 8, 2021).

On February 17, 2022, Willis demanded that Western National resolve outstanding accident-related medical bills totaling approximately $98,000, pursuant to its *Ridley* obligation. Willis's demand was accompanied by nearly 200 pages of documentation related to these so-called "backlog bills" that Western National had not paid. The backlog bills included bills that had been conditionally

paid by Medicare.

On February 23, 2022, Western National's attorney replied that Willis interpreted the *Ridley* order "much too broadly," and that instead "Judge Harada's Order was narrowly tailored to require advance *Ridley* payments of medical bills over which Medicare was actively exercising its subrogation rights." (Doc. 26-8 at 1–2.)

In April 2021, the Montana Legislature passed an act revising the measure of damages recoverable for medical services and treatment in an action arising from bodily injury or death. 2021 Mont. Laws Ch. 327. The act amended Mont. Code Ann. § 27-1-308 to limit a plaintiff's recovery for medical treatment to the amount actually paid by or on behalf of the plaintiff, not the amount billed. The act was explicitly limited in applicability to claims accruing on or after the effective date of April 30, 2021. *Id.* § 6. Thus, by its plain language, the act was inapplicable to Willis's claims in the underlying lawsuit. Nevertheless, an entry in Western National's claim file from September 8, 2022, indicates that Western National was under the impression that § 27-1-308 would cause a potentially significant reduction in Willis's recovery, since amounts actually paid by Medicare are much lower than amounts billed by medical providers. (Doc. 26-10 at 23.) Per the claim file, it was not until March 27, 2023, that Oppegaard's counsel disabused Western National of the idea that § 27-1-308 would reduce Willis's eventual recovery. (*Id.*

at 11–12.)

The parties engaged in mediation on September 12, 2022. Willis opened with a demand of $2 million—the policy limit—and Western National counter-offered $100,000 of new money on top of advance medical payments it had already made. Western National alleges that Willis then terminated the mediation. Willis contends they intended to make a counteroffer, but the mediator terminated the mediation before they could do so.

On September 15, 2022, Western National moved to set aside and vacate Judge Harada's *Ridley* order and judgment pursuant to Montana Rule of Civil Procedure 60(b)(6). Part of the basis for Western National's motion was that "subsequent rulings which have occurred in the case conclusively demonstrate that the liability of the insured, defendant Oppegaard is *not* reasonably clear for purposes of requiring advance payment of medical expenses under *Ridley*." (Doc. 26-17 at 2) (emphasis in original). Western National took the position that the above-quoted language from Judge Harada's September 8, 2021, order regarding comparative fault meant that Oppegaard's liability for the accident was no longer reasonably clear, and thus, called into question whether *Ridley* payments were still warranted.

On September 20, 2022, along with their brief in opposition to Western National's motion, Willis filed an affidavit from Tom stating that Western National

had only paid $103 of the approximately $98,000 in medical bills that Nelson had transmitted to Western National on February 17, 2022. In its Statement of Disputed Facts filed here, Western National contests this characterization of payments it made between February and September of 2022. (Doc. 35 at 24.) In support of its disputation, Western National cites to a chart detailing four payments made to medical providers during this period, totaling approximately $3,486. (Doc. 35-27 at 2.)

Willis also attached documentation to the September 20, 2022, response brief demonstrating that Tom's social security benefits had been garnished by $630.76 in 2021. Three days later, Western National issued a payment of $630.76 to Willis.

The District Court held a hearing on Western National's motion on September 28, 2022. The District Court did not issue a ruling, however, and the motion was, therefore, deemed denied on November 14, 2022, pursuant to Mont. R. Civ. P. 60(c)(1).[2]

On October 28, 2022, Oppegaard filed an offer of judgment of $350,000 for the negligence claim. Then, on May 16, 2023, Oppegaard's defense counsel offered to settle the claims against Oppegaard for $500,000, together with a release

---

[2] A motion under Rule 60(b) must be determined within 60 days from its filing date or it is deemed denied.

of all past and future claims against Western National. Willis rejected the offer and the parties proceeded to trial.

On June 16, 2023, a jury found in favor of Willis, attributing 98% of negligence for the accident to Oppegaard and 2% to Tom. The jury awarded Willis a total of $750,494.69; $230,494.69 for past and future medical bills, $170,000 for past and future pain and suffering, $100,000 for past and future emotional distress, $150,000 for past and future loss of established course of life, and $100,000 to Carol Willis for loss of consortium.

On June 23, 2023, Western National moved to reduce the verdict by $143,609.85. Western National contended this figure was the sum of advance payments it had already made and amounts that had been written off by medical providers due to arrangements negotiated by Medicare. Western National characterized these write-off amounts as "phantom damages." The verdict was reduced by $77,872.01, to account for *Ridley* payments Western National had made. Judge Harada declined to reduce the verdict by an additional $65,737.84, rejecting Western National's phantom damages argument.

Final judgment in the underlying litigation was entered on December 20, 2023. On January 4, 2024, Western National issued payment in full satisfaction of the reduced verdict, including interest, thus concluding Willis's personal injury claim.

As to the declaratory judgment claim, Western National filed a notice of appeal of the District Court's denial of its Rule 60(b)(6) motion to set aside and vacate the *Ridley* order and judgment. On May 29, 2024, the Montana Supreme Court denied Western National's appeal, holding there was no justiciable controversy since Western National had satisfied the judgment and was not seeking restitution of any *Ridley* payments.

On June 7, 2024, Willis served Western National with its Amended Complaint in this case. In this action, Willis contends that Western National engaged in statutory and common law bad faith in both its adjustment of Willis's claim and in its conduct during the underlying lawsuit. Willis alleges that Western National has violated the UTPA[3] by engaging in five prohibited practices: (1) "misrepresent[ing] the facts of the accident and its own insurance policy provisions relating to coverages at issue in order to avoid or delay payment of claims" in violation of Mont. Code Ann. § 33-18-201(1); (2) "refus[ing] to comply with court orders and rejection of information in its possession render[ing] its investigation unreasonable" in violation of § 33-18-201(4); (3) "fail[ing] to attempt in good faith to effectuate prompt, fair and equitable settlement of the claims against

---

[3] Portions of the UTPA have been amended since Willis filed this lawsuit in June 2022. The version of the UTPA in effect at the time of filing controls the Court's analysis. *See Vance v. Barrett*, 345 F.3d 1083, 1086 n.1 (9th Cir. 2003). Accordingly, unless otherwise noted, all references to statutory provisions pertain to the version of the UTPA that was in effect in June 2022.

Oppegaard" in violation of § 33-18-201(6); (4) "fail[ing] to affirm or deny coverage of the claims within a reasonable time after proof of loss" in violation of § 33-18-201(5); and (5) "fail[ing] to promptly settle the claims against Oppegaard after liability had become reasonably clear in order to influence settlement of portions of the claim" in violation of § 33-18-201(13). (Doc. 4 at 4–5.) Willis also alleges Western National "violated Montana's common law precedent on insurance bad faith" and breached its duty of good faith and fair dealing. (*Id.* at 6.)

In its Answer, Western National asserts an affirmative defense that it "had a reasonable basis in fact and law for its handling of Plaintiffs' claims." (Doc. 6 at 4.)

On November 17, 2025, Willis moved for partial summary judgment on this affirmative defense, arguing that Western National had no reasonable basis "for refusing to advance pay medical expenses partially paid by Medicare." (Doc. 28 at 8.)

On December 11, 2025, Western National filed a cross-motion for summary judgment on its reasonable basis affirmative defense, seeking "judgment as a matter of law on any of Plaintiffs' claims that are predicated on Western National contesting Plaintiffs' request for advance payments." (Doc. 33 at 2.) On December 12, 2025, Western National also filed a motion for summary judgment seeking dismissal of all of Willis's claims. (Doc. 36.)

## II. LEGAL STANDARDS

Summary judgment is appropriate where the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable factfinder to return a verdict for the nonmoving party. *Id*. "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the moving party fails to discharge this initial burden, summary judgment must be denied, and the court need not consider the non-moving party's evidence. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 159-60 (1970).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party must "go beyond the pleadings and by 'the depositions, answers to

interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). The opposing party cannot defeat summary judgment merely by demonstrating "that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586; *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995) ("The mere existence of a scintilla of evidence in support of the nonmoving party's position is not sufficient.") (citing *Anderson*, 477 U.S. at 252).

The Court must view all inferences drawn from the underlying facts in the light most favorable to the non-moving party. *See Matsushita*, 475 U.S. at 587. "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, [when] he is ruling on a motion for summary judgment." *Anderson*, 477 U.S. at 255.

When parties file cross-motions for summary judgment, the Court reviews each motion on its own merits. *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001).

## III. ANALYSIS

### A. Affirmative Defense of Reasonable Basis in Law or Fact

An insurer cannot be held liable for violation of the UTPA, as codified at Mont. Code Ann. § 33-18-201(1), (4), (5), (6), or (13), "if the insurer had a

reasonable basis in law or in fact for contesting the claim or the amount of the claim, whichever is in issue." Mont. Code Ann. § 33-18-242(5). An insurer's reasonable basis for contesting a claim is also an affirmative defense to a common law bad faith claim. *Palmer by Diacon v. Farmers Ins. Exch.*, 861 P.2d 895, 901 (Mont. 1993).

An insurer asserting a reasonable basis affirmative defense bears the burden of establishing its reasonable basis by a preponderance of the evidence. *Watters v. Guar. Nat. Ins. Co.*, 3 P.3d 626, 637 (Mont. 2000) *overruled on other grounds by Shilhanek v. D-2 Trucking, Inc.*, 70 P.3d 721 (Mont. 2003). "[W]hile the assessment of reasonableness generally is within the province of the jury (or the court acting as fact-finder), reasonableness is a question of law for the court to determine when it depends entirely on interpreting relevant legal precedents and evaluating the insurer's proffered defense under those precedents." *Redies v. Att'ys Liab. Prot. Soc.*, 150 P.3d 930, 938 (Mont. 2007) (internal citation omitted).

Whether an insurer had a reasonable legal basis for contesting a claim is determined by "survey[ing] the legal landscape as it existed during the relevant time period." *State Farm Mut. Auto. Ins. Co. v. Freyer*, 312 P.3d 403, 418 (Mont. 2013). The focus of the inquiry "is not whether [the Court] agrees with the plaintiff's theories of liability in the underlying suit, but rather, whether the insurer's grounds for contesting those theories were reasonable under existing

law." *Redies*, 150 P.3d at 939. "[A]n insurer is entitled to challenge a claim on the basis of debatable law or facts and will not be liable for bad faith or punitive damages for denying coverage if its position is not wholly unreasonable." *Palmer by Diacon*, 861 P.2d at 902 (quoting *Safeco Ins. Co. v. Ellinghouse*, 725 P.2d 217, 233 (Mont. 1986)). In the absence of caselaw on point, "'the determinative question' is whether the law in effect at the time, caselaw or statutory, provided sufficient guidance to signal to a reasonable insurer that its grounds for denying the claim were not meritorious." *Freyer*, 312 P.3d at 419. "[A]n insurer should not be immune from liability under [the UTPA] . . . simply because [the Montana Supreme Court] had not yet *explicitly* rejected the legal proposition on which the insurer relied in the underlying action. This is precisely the point of evaluating the 'reasonableness' of the insurer's proffered defense." *Redies*, 150 P.3d at 940 (emphasis in original).

**1. Collateral Estoppel**

Willis first argues that Western National should be collaterally estopped from asserting it had a reasonable basis in fact or law for not paying the CMS conditional payments and other accident-related bills because this issue was already decided in the underlying litigation.

The doctrine of collateral estoppel "prevents relitigation by the parties of issues actually litigated and necessarily decided in a prior action." *United States v.*

*Real Prop. Located at Section 18*, 976 F.2d 515, 518 (9th Cir. 1992). "In determining the collateral estoppel effect of a state court judgment, federal courts must, as a matter of full faith and credit, apply that state's law of collateral estoppel." *Bugna v. McArthur*, 33 F.3d 1054, 1057 (9th Cir. 1994).

Under Montana law, collateral estoppel applies when:

> (1) the identical issue raised was previously decided in a prior adjudication; (2) a final judgment on the merits was issued in the prior adjudication; (3) the party against whom the plea is now asserted was a party or in privity with a party to the prior adjudication; and (4) the party against whom preclusion is now asserted was afforded a full and fair opportunity to litigate the issue.

*Adams v. Two Rivers Apts., LLLP*, 444 P.3d 415, 419 (Mont. 2019).

Here, Willis argues that, during the underlying litigation, "[t]he issue of whether Western National must advance pay Willis's medical expenses was raised, briefed, argued, resolved, and reduced to a judgment." (Doc. 28 at 17.)

Western National disputes that it is collaterally estopped from advancing its reasonableness argument. Western National argues that the issue decided in the underlying litigation was whether *Ridley* payments were required, not whether Western National's position regarding its *Ridley* obligation and the CMS conditional payments was reasonable. Accordingly, Western National argues that Willis's collateral estoppel argument fails because the issue decided in the underlying litigation and the issue now before the Court are not identical.

/ / /

To determine whether the issues are identical, the court must "compare the pleadings, evidence, and circumstances surrounding the two actions." *Adams*, 444 P.3d at 419. In doing so, a court does not "equate an issue with elements of a cause of action; rather, the bar extends to all questions essential to the judgment and actively determined by a prior valid judgment." *Baltrusch v. Baltrusch*, 130 P.3d 1267, 1276 (Mont. 2006) (cleaned up).

Under Montana law, collateral estoppel bars "relitigation of determinative facts which were actually or necessarily decided in a prior action. *McDaniel v. Montana*, 208 P.3d 817, 826 (Mont. 2009). Further "[i]f a new legal theory or factual assertion put forward in the second action is related to the subject-matter and relevant to the issues that were litigated and adjudicated previously, so that it *could* have been raised, the judgment is conclusive on it despite the fact that it was not in fact expressly pleaded or otherwise urged." *Id*. at 826–27 (quoting *Haines Pipeline Constr., Inc. v. Mont. Power Co.*, 876 P.2d 632, 636–37 (Mont. 1994)).

Here, the Court is not confronted with an issue identical to one that was already decided in the underlying litigation. Judge Harada's *Ridley* order considered whether Western National was obligated to pay Willis's medical bills prior to resolution of the claim against Oppegaard. The Montana Supreme Court's subsequent order dismissing Western National's appeal considered whether Western National presented the court with a justiciable controversy. At no point in

the underlying litigation did a court rule on whether Western National's position regarding the *Ridley* payments constituted a reasonable interpretation of the law. Because this issue was never decided in the underlying litigation, collateral estoppel is inapplicable. Accordingly, the Court will evaluate Western National's reasonable basis affirmative defense on its merits.

**2. Reasonable Basis in Law**

Western National argues it had a reasonable basis in law to contest advance paying amounts that had already been paid by a collateral source—in this case, Medicare. In support, Western National points out that CMS's collection actions were not triggered by their payments, but by the $5,000 medical payment Willis received from their first-party insurer, Kemper. Western National also asserts that the legal landscape during the relevant time period was unsettled because the Montana Supreme Court had not issued a ruling resolving the question of whether an insurer is required to make *Ridley* payments for bills which a collateral source has already paid, and Montana district courts confronted with this question had reached conflicting decisions. The Court disagrees for two reasons.

First and foremost, Western National was not required to gaze across the legal landscape and survey post-*Ridley* decisions to determine whether the *Ridley* requirements applied to Willis's case. Judge Harada made that determination for them. In her "Order Regarding Ridley Payments," Judge Harada expressly

rejected a collateral source exception to *Ridley*, stating "[w]hether the injured party's expenses may be payable from another source is not a consideration." (Doc. 26-6 at 3.) She then quoted with approval from another state district court's decision in *Fuchs v. Scott Wyss, Old Republic Insurance Company, et al*, where the court similarly declined to find such an exception, and said: "[a]s more exceptions are created, it becomes more complicated for an injured party to recover what is properly owed to them. An injured party should not be required to prove what has or has not been paid by any other source in order to recover from the tortfeasor's insurance company. This is contrary to *Ridley's* intent to impose the burden on the responsible party, not the innocent victim." (*Id.* at 4.)

Judge Harada also distinguished a state district court decision relied on by Western National here, *Greenough v. Safeco Ins. Co. of Illinois*, 2014 WL 10803703 (Mont. Dist. Ct. Feb 12, 2013), pointing out that there was no concern of financial distress in *Greenough*, while Willis was receiving notices from the U.S. Treasury and garnishment of their social security benefits. (*Id.*) The court then plainly concluded that "*Ridley's* advance pay requirement applies to the facts in this case." (*Id.*)

Undeterred by this straightforward holding, Western National did not thereafter pay the backlog of Tom's medical expenses. When a demand was made to pay these medical expenses, Western National declined, construing Judge

Harada's decision to be "narrowly tailored to require advance *Ridley* payments of medical bills over which Medicare was actively exercising its subrogation rights." (Doc. 26-8 at 2.) Judge Harada's order contained no such limitation, and Western National had no reasonable basis to continue in its refusal to pay Tom's past medical expenses, regardless of whether they had been conditionally paid by Medicare.

Secondly, the Court agrees with Judge Harada's analysis of this issue, and finds that Western National did not have a reasonable basis in law or fact to decline its *Ridley* obligation. In reviewing the legal landscape at the time, there were three district court decisions that indicated an insurer is not required to make *Ridley* payments that a collateral source has already paid: *Bair v. Allstate Ins. Co.*, DV-04-514 (Mont. Dist. Ct. Mar. 25, 2005); *Helms v. Safeco Ins. Co. of Ill.*, DDV-08-1256(a) (Mont. Dist. Ct. May 29, 2009); *Greenough v. Safeco Ins. Co. of Ill.*, 2014 WL 10803703 (Mont. Dist. Ct. Feb. 12, 2013). There were also three district court decisions that held the opposite: *Cottrell v. Twin Hills Colony*, 2007 Mont. Dist. LEXIS 124 (Mont. Dist. Ct. Apr. 16, 2007); *Fuchs v. Wyss*, 2018 WL 10436319 (Mont. Dist. Ct. June 13, 2018); *Uhlig v. Allied Prop. & Cas. Ins. Co.*, DV-17-1292 (Mont. Dist. Ct. Dec. 31, 2018). While this division of authority may initially appear to support the conclusion that Western National's reliance on the first category of cases was not unreasonable, a closer examination of those

decisions demonstrates they are not applicable here.

*Ridley* provides the benchmark to be followed in these circumstances. Like this case, *Ridley* dealt with medical bills incurred by a third-party claimant injured in an automobile accident for which the liability of the insured was reasonably clear. In *Ridley*, the Montana Supreme Court held that when an insurer's liability is reasonably clear, it must pay a third-party claimant's accident-related medical expenses in advance of a final settlement or adjudication of the underlying claim. 951 P.2d at 993. The Montana Supreme Court later distilled *Ridley* to a two-part test: "(1) whether liability is reasonably clear and (2) whether it is reasonably clear that a medical expense is causally related to the accident." *Teeter v. Mid-Century Ins. Co.*, 406 P.3d 464, 468 (Mont. 2017). Where both parts of the test are met, an insurer is required to pay medical bills prior to settlement of the claim.

The *Ridley* court reasoned that:

> One of the most significant obligations that innocent victims of automobile accidents incur and for which mandatory liability insurance laws were enacted, is the obligation to pay the costs of medical treatment. If the insurer has no obligation to pay those expenses in a timely fashion, even though liability is reasonably clear, then the protection provided by Montana's mandatory liability laws would be of little value.
>
> Medical expenses from even minor injuries can be devastating to a family of average income. The inability to pay them can damage credit and, as alleged in this case, sometimes preclude adequate treatment and recovery from the very injuries caused. Just as importantly, the financial stress of being unable to pay medical expenses can lead to the ill-advised settlement of other legitimate claims in order to secure a

> benefit to which an innocent victim of an automobile accident is clearly entitled. We conclude that this is not what was intended by the Montana Legislature when mandatory liability insurance laws and unfair claims practice laws were enacted.

*Ridley*, 951 P.2d at 993.

These public policy considerations formed the basis of the court's holding in *Ridley*, and they comprise a crucial part of the legal landscape. In relying on *Helms*, *Bair*, and *Greenough* to support its contention that it was not obliged to make *Ridley* payments for bills that Medicare had already paid, Western National does not properly consider the underlying rationale in these cases, nor, critically, the underlying rationale of *Ridley*. Examination of these district court cases also reveals that they are materially distinguishable from the instant case; the courts in *Bair*, *Helms*, and *Greenough* were not confronted with situations in which the plaintiff was experiencing financial distress due to an insurer's refusal to pay medical bills that had been paid by a collateral source.

In *Helms*, the insurer disputed that liability for the plaintiff's injuries was reasonably clear. Although the *Helms* court did mention that it appeared plaintiff's medical expenses were paid by a worker's compensation plan, and therefore, the policy considerations in *Ridley* were not present, this acknowledgment of a collateral source payment was not central to the court's decision. The court in *Helms* denied summary judgment for the plaintiff based on the disputed factual issue regarding liability, not on payments from a collateral source.

*Bair* is also readily distinguishable because the insurer had paid all the plaintiff's accident-related bills. Rather than considering whether payments from a collateral source obviate an insurer's *Ridley* obligations, *Bair* considered whether a single insurer was required to make double payments to the plaintiff under two separate provisions of the same policy. Thus, the decision in *Bair* was based largely on issues of contract law that are inapplicable here.

Likewise, in *Greenough*, the plaintiff did not allege that payments from insurers were insufficient to cover her medical bills. As here, the plaintiff in *Greenough* received a $5,000 medical payment from her first-party insurer. The third-party insurer then offset payment of the plaintiff's medical bills by that amount. The *Greenough* court held that accounting for payments from a collateral source in this manner did not violate the third-party insurer's *Ridley* obligation because the plaintiff's medical bills were paid in full and the plaintiff was not facing financial distress. Thus, the *Greenough* court found that "[s]imilar to the situations in *Bair* and *Helms*, the underlying concerns expressed in *Ridley* are not present in the instant case." 2014 WL 10803703, at *5. The *Greenough* court's summation of *Ridley* is instructive: "As the Montana Supreme Court made clear in *Ridley*, the reason advance payment of causally-related medical expenses is required is to lessen the financial and emotional burden on a plaintiff who would otherwise be forced to pay such expenses out of his or her own pocket or face

collection or such other action." *Id*.

Western National is correct that the Montana Supreme Court has yet to issue an opinion addressing whether a collateral source's payment of medical bills removes the need for an insurer to make those same payments under *Ridley*. But Western National's narrow focus on collateral sources elides the factual situation here, as well as the animating force behind *Ridley* of preventing innocent victims of negligence from experiencing financial distress due to accident-related medical bills.

In this case, there is no reasonable factual dispute that the liability of Western National's insured was reasonably clear, and that Willis experienced financial distress due to collection actions related to medical expenses stemming from the accident. Additionally, by July 2020 at the latest, Western National was aware that Willis was in danger of facing collection actions due to accident-related medical bills. Western National was also repeatedly notified of the progression of the federal government's collection actions, culminating in the garnishment of Tom's social security checks.

Under these circumstances, Western National's position is in direct conflict with Montana Supreme Court precedent under *Ridley* and is also unsupported by district-level caselaw. As Willis points out, no Montana court has ever held that *Ridley* does not apply when a collateral source has paid medical bills, and is

actively seeking recovery for those payments from the injured party.

Additionally, the fact that Kemper's payment triggered CMS's collection action does not make Western National's position any more reasonable. Western National acknowledged its liability was reasonably clear, there is no dispute that Tom's medical bills were causally related to the accident, and Western National knew that Willis faced financial distress due to bills from accident-related medical expenses. Given evidence of such distress, it is unreasonable for an insurer to take the position that it is relieved of its obligations under *Ridley* simply because the third-party's financial distress stemmed from a collateral source's payment of some medical bills.

Accordingly, the Court cannot find that Western National had a reasonable basis in law for contesting Willis's demands that it pay for his medical expenses, including those that had previously been conditionally paid by Medicare. Summary judgment on Western National's reasonable basis affirmative defense is appropriate.

Having found that Willis's UTPA claims are not precluded by Western National's affirmative defense, the Court will turn to the merits of Western National's motion for summary judgment seeking dismissal of all of Willis's claims (Doc. 36).

/ / /

### B. UTPA Claims

As the party asserting violations of the UTPA, Willis bears the burden of proving its claims at trial. *See Draggin' Y Cattle Co. v. Junkermier, Clark, Campanella, Stevens, P.C.*, 439 P.3d 935, 944 (Mont. 2019); Mont. Code Ann. § 33-18-242. As the party moving for summary judgment on Willis's UTPA claims, Western National must "produce evidence negating an essential element of [Willis's] case, or . . . show that [Willis] does not have enough evidence of an essential element of its claim[s] to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1106 (9th Cir. 2000). Before evaluating the merits of the parties' arguments under various subsections of the UTPA, the Court will first address several arguments Western National raises which are relevant to more than one subsection.

First, Western National makes a point regarding the monetary award Willis secured in the underlying litigation. Western National asserts that Willis ultimately benefitted from the fact that Medicare, rather than Western National, paid some of Tom's medical expenses because the jury verdict was based on amounts billed, and Medicare actually paid much less than was billed due to special arrangements it has with medical providers. Western National contends that this enabled Willis to pocket tens of thousands of dollars more than they would have if Western National had simply paid all of Tom's medical bills.

This "phantom damages" argument was already addressed in the underlying litigation, and Judge Harada rejected Western National's premise. (Doc. 35-23.) The jury awarded a lump sum for past *and future* medical bills, so Western National's amount billed versus paid argument does not stand up to scrutiny; the purportedly phantom damages are conceivably amounts the jury awarded Willis for future medical expenses. (*See id.* at 3.)

In any event, even if Western National were correct in its phantom damages contention, it is irrelevant to an evaluation of Willis's UTPA claims. Western National's no harm, no foul argument has been rejected by the Montana Supreme Court. *See Lorang v. Fortis Ins. Co.*, 192 P.3d 186, 221 (Mont. 2008) ("Where an insurer wrongfully denies a claim, subsequent payment of the claim does not establish that the insurer complied with its duty of good faith."). If an insurer could "'cure' an unreasonable investigation by subsequently paying the claim after a denial, insurers could simply ignore the UTPA and forego reasonable investigation, or any investigation, until the claimant takes steps to enforce his or her contractual rights, and yet remain immune from liability under [the UTPA]. This would effectively render the UTPA's mandate meaningless." *Id.* at 216. Accordingly, the Court will not entertain Western National's argument that its refusal to meet its *Ridley* obligation ultimately worked to Willis's benefit. Any violations of the UTPA committed by Western National could not be cured by

subsequently paying the judgment rendered by the jury in the underlying litigation.

Next, Western National argues that its "[l]itigation conduct cannot be the basis for bad faith or UTPA liability." (Doc. 34 at 35.) In support, Western National relies on *Palmer by Diacon*, as well as a statement from *Redies* that an insurer is allowed "to test the scope and boundaries of legal duties, remedies, and defenses." 150 P.3d at 940. But even though it acknowledged an insurer's right to test the boundaries of its legal duties, the *Redies* court went on to make clear that an insurer must have a reasonable basis for doing so. *Id.* Nowhere in *Redies* did the court indicate that litigation conduct could not constitute bad faith or form the basis of a UTPA claim.

As for *Palmer by Diacon*, the court explicitly stated that there is not "a blanket prohibition" on considering an insurer's conduct after filing suit based on a UTPA violation. 861 P.2d at 915 ("In some instances, however, evidence of the insurer's post-filing conduct may bear on the reasonableness of the insurer's decision and its state of mind when it evaluated and denied the underlying claim."). Instead, the court instructed that "[w]hen analyzing the relevance of an insurer's postfiling conduct, therefore, the proper inquiry should be into the extent to which such conduct casts light on the reasonableness of the original denial of the policyholder's claim." *Id.* at 916 (quoting Randy Papetti, *The Insurer's Duty of Good Faith in the Context of Litigation*, 60 Geo. Wash. L. Rev. 1931, 1969–70

(1992)).

Indeed, the Montana Supreme Court has explicitly held that "[t]he commencement of a lawsuit by the insured does not end an insurers [sic] duties to the insured . . . [and] the continuing duty of good faith can be breached by an insurer's postfiling conduct." *Federated Mut. Ins. Co. v. Anderson*, 991 P.2d 915, 921–22 (Mont. 1999). Nevertheless, the court cautioned against the use of an insurer's litigation tactics and strategy in defending the claim, and instructed that courts should weigh the probative value of such evidence against its prejudicial effect. *Id*. at 922.

In sum, Willis is not categorically precluded from arguing that Western National's post-filing conduct constituted bad faith. The admissibility of any such evidence will be determined at trial.

Finally, the Court notes that Western National's briefs regarding the UTPA repeatedly reference and explicitly incorporate arguments made in its briefing on the reasonable basis affirmative defense. As the Court has already determined that Western National has not proffered a reasonable basis in law that would absolve it of liability under the UTPA, the Court will not individually address these arguments each time they are raised by Western National in its UTPA briefing.

With these threshold and generally applicable considerations in mind, the Court now turns to the parties' arguments regarding the specific UTPA subsections

that Willis alleges Western National violated. The Court will address the subsections in the order that they are argued in Western National's brief in support of summary judgment.

**1. Subsection 13**

Subsection 13 of the UTPA prohibits an insurer from engaging in a practice commonly known as "leveraging," whereby an insurer "fail[s] to promptly settle claims, if liability has become reasonably clear, under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage[.]" Mont. Code Ann. § 33-18-201(13). Subsection 13 "applies to an insurer's failure to pay one type of damages for which liability has become reasonably clear in order to influence settlement of claims for other types of damages made pursuant to the same policy[.]" *Ridley*, 951 P.2d at 994.

Western National argues that subsection 13 is inapplicable because "Plaintiffs do not assert that more than one portion of the policy's coverage or type of damages were at issue. Nor do they establish that one portion of the policy's coverage was leveraged to influence another portion of the policy's coverage." (Doc. 37 at 14.) Willis contends that Western National engaged in leveraging by (1) refusing to make *Ridley* payments in order to obtain a lower settlement and/or jury verdict and (2) conditioning settlement of the Oppegaard claims on release of claims against Western National. (Doc. 48 at 11.)

In support of its first grounds for the leveraging claim, Willis points to Western National's mistaken belief that § 27-1-308 would reduce the ultimate amount it would be required to pay out for Willis's medical bills. Willis argues that "[t]hese calculated savings to [Western National] could only be achieved if [Western National] refused to pay the conditional payments and backlog bills." (*Id.* at 12.) Western National argues "[t]here is no evidence Western National *withheld* payment for certain damages or certain coverages to force the settlement of others." (Doc. 37 at 16) (emphasis in original).

But Western National did, undisputably, withhold *Ridley* payments by not paying bills that were paid by a collateral source. Whether it did so because, as Willis alleges, it calculated that it would ultimately be required to pay a lower amount since Medicare paid out less than providers billed, is a question of fact inappropriate for summary judgment.

Accordingly, the Court finds that there is a genuine factual dispute as to whether Western National withheld the *Ridley* payments to leverage a lower global settlement. Having reached this conclusion, it is unnecessary for the Court to evaluate Willis's argument regarding conditioning the settlement of the Oppegaard claim upon a release of all claims against Western National.

Summary judgment is denied to Western National on Willis's subsection 13 claim.

**2. Subsection 6**

Subsection 6 of the UTPA prohibits an insurer from "neglect[ing] to attempt in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear[.]" Mont. Code Ann. § 33-18-201(6).

Western National argues that its liability was never "reasonably clear" as that phrase is defined by Montana caselaw. In doing so, Western National focuses on the various global settlement offers the parties issued both prior to and throughout the yearslong underlying litigation, and points out that these settlements contemplated damages beyond just medical payments under *Ridley*.

In response, Willis asserts that Western National violated its duty under subsection 6 by failing to settle the CMS conditional payments and the so-called backlog bills following the issuance of Judge Harada's *Ridley* order. Willis further asserts in its response brief that it is entitled to partial summary judgment on its subsection 6 claim because there is no genuine issue of material fact that Western National failed to settle the CMS conditional payments and backlog bills after Judge Harada issued her *Ridley* order requiring payment.

A determination of liability under subsection 6 typically involves a factual determination regarding the reasonableness and promptness of the insurer's effectuation of a settlement. *See Lorang*, 192 P.3d at 219. Neither party has carried the burden on summary judgment of showing an absence of material fact

under this subsection; good faith or bad faith could be found depending on whether factual inferences are drawn in favor of Western National or Willis. Nor does the Court's finding that Western National lacked a reasonable basis in law for withholding *Ridley* payments necessarily mean that it acted in bad faith in doing so. Accordingly, neither party is entitled to summary judgment on the subsection 6 claim.

### 3. Subsection 1

Subsection 1 of the UTPA prohibits an insurer from "misrepresent[ing] pertinent facts or insurance policy provisions relating to coverages at issue[.]" Mont. Code Ann. § 33-18-201(1). "[A] claim of misrepresentation under the UTPA is determined by an objective analysis of the substance of the representation at issue, without regard to whether it resulted from an intentional effort to mislead, carelessness, incompetence, or anything else." *Lorang*, 192 P.3d at 212.

Western National contends the subsection 1 claim fails because Willis does not show that Western National misrepresented any coverage provisions. Western National argues that the matter of advance payments under *Ridley* is a legal issue, not one that involves a misrepresentation covered by subsection 1.

Willis counters that Western National misreads subsection 1 and ignores that it can be violated by the misrepresentation of facts relating to coverages, not just misrepresentations of the coverage provisions themselves. Willis argues Western

National misrepresented several facts relating to coverage, such as: whether it paid certain bills; its knowledge of CMS collection actions; whether § 27-1-308 applied to Willis's claims; and whether Oppegaard's counsel was permitted to convey an offer of $500,000 to settle the Oppegaard claim contingent on a release of present and future claims against Western National. In reply, Western National avers that none of these alleged factual misrepresentations relate to the liability coverage.

Here, summary judgment is again precluded by disputed issues of fact. For instance, one of the misrepresentations Willis alleges is related to a September 30, 2020, email from Western National's claims adjuster in which the adjuster told Nelson "I did pay those bills from this summer." (Doc. 26-11 at 1.) Willis contends that this is untrue, as the non-payment of these bills led to the collection actions.

Western National asserts here that "it did make payments in September 2020," although it is unclear whether the payments made in September were the same as "those bills from this summer." (Doc. 57 at 7.) Thus, there is a question of fact as to whether Western National made material misrepresentations about its payment of medical expenses, regardless of whether the representation involved an intent to mislead.

Western National also argues that, even accepting Willis's contention that Western National misrepresented whether it had paid certain bills, this was not a

misrepresentation regarding coverage that can constitute a violation of subsection 1. (*Id.*) Western National does not cite any authority for this contention, and the Court is unpersuaded that, as a matter of law, a statement by an insurer regarding whether it paid medical bills does not amount to a representation of a pertinent fact relating to coverages at issue.

In sum, Western National is not entitled to summary judgment on Willis's subsection 1 claim.

**4. Subsection 4**

Subsection 4 of the UTPA provides that an insurer may not "refuse to pay claims without conducting a reasonable investigation based on all available information[.]" Mont. Code Ann. § 33-18-201(4). "[T]he nature of the investigation itself is the sole issue in a claim of unreasonable investigation under the UTPA." *Lorang*, 192 P.3d at 215. The issue is "not about the amount of the settlement which the insurer paid to the plaintiffs, but, rather, about the *process* used by the insurer *before* entering the settlement." *Id.* at 216 (emphasis in original) (cleaned up) (quoting *Peterson v. Doctors' Co.*, 170 P.3d 459, 466 (Mont. 2007)). Because subsection 4 "mandates a reasonable investigation *before* a denial[,] . . . no amount of meritorious conduct *after* the denial (such as thorough investigation or payment of the claim) can satisfy this obligation." *Id.* (emphasis in original). "[R]easonable steps taken in the investigative process do not render the

investigation ultimately reasonable." *Id.* at 217. "[T]he reasonableness of an insurer's investigation is a factual issue which ordinarily must be resolved by the jury. However, where reasonable minds could reach but one conclusion, the issue is appropriately determined as a matter of law on summary judgment." *Id.*

Western National argues that Willis's subsection 4 claim fails because Western National never outright refused to pay claims, as required by the statutory language. Western National points to the fact that it advance paid nearly $78,000 in *Ridley* payments, and made offers to settle Willis's claims as early as December 2020 and as late as May 2023. Western National also repeats its reasonable basis defense, arguing that its failure to make the CMS conditional payments cannot constitute liability for bad faith.

In response, Willis holds up Western National's refusal to make the CMS conditional payments as a refusal to pay claims. Willis also argues that there is an open factual question of whether Western National's investigation was reasonable since its allegedly poor recordkeeping caused it to lose bills that Willis had submitted and generated uncertainty as to which bills had been paid and which had not. Further, Willis points again to Western National's mistaken belief that § 27-1-308 applied to Willis's claims as evidence that Western National did not reasonably investigate the damages at issue.

/ / /

Western National's contention that it never refused to pay claims is clearly incorrect. It unquestionably refused to pay certain bills on the basis that they were paid by a collateral source. Even if Western National were correct that it had a reasonable legal basis to do so, this would not change the fact that it did, in fact, refuse to pay *Ridley* claims made by Willis, potentially rendering it liable under subsection 4. The determination of whether Western National violated subsection 4, therefore, entails a factual question regarding the reasonableness of Western National's investigation.

Accordingly, because resolution of factual issues is inappropriate on summary judgment, Western National is denied summary judgment on Willis's subsection 4 claim.

**5. Subsection 5**

Subsection 5 of the UTPA prohibits an insurer from "fail[ing] to affirm or deny coverage of claims within a reasonable time after proof of loss statements have been completed[.]" Mont. Code Ann. § 33-18-201(5).

Western National argues that third-party claimants, such as Willis, are categorically prohibited from maintaining claims under subsection 5. In support of this contention, Western National engages in an extended analysis of caselaw and the statutory scheme governing insurance to reach the conclusion that "[t]he plain language of § 33-18-201(5) contemplates only first-party claims brought by

insureds who submit 'proof of loss statements.'"[4] (Doc. 37 at 28.)

Western National's argument is contradicted by the text of the UTPA. Section 33-18-242(1) of the UTPA provides that "[a]n insured *or a third party claimant* has an independent cause of action against an insurer for actual damages caused by the insurer's violation of 33-18-201(1), (4), *(5)*, (6), (9), or (13)." Mont. Code Ann. § 33-18-242(1) (emphasis added). As Western National points out in its opening brief, "[i]f the intent of the legislature can be determined from the plain meaning of the words used in the statute, the plain meaning controls, and this Court need go no further nor apply any other means of interpretation." *Mont. Vending, Inc. v. Coca-Cola Bottling Co. of Mont.*, 78 P.3d 499, 502 (Mont. 2003). The plain language of § 33-18-242(1) shows that third party claimants may bring a cause of action under subsection 5.

[4] In its reply brief, Western National also argues that "[e]ven assuming Plaintiffs would have standing to assert this claim despite not being policyholders, there are no facts suggesting that Western National failed to affirm or deny *coverage* after receiving 'proof of loss statements.'" (Doc. 57 at 11) (emphasis in original). Generally, courts do not consider arguments raised for the first time in a party's reply brief. *Nevada v. Watkins*, 914 F.2d 1545, 1560 (9th Cir. 1990); *Leisure Concepts, Inc. v. Cal. Home Spas, Inc.*, 2015 WL 12520975, at *1 (E.D. Wash. Apr. 22, 2015) ("Allowing new issues to be raised in reply unfairly would deny the opposing party a fair chance to respond."). Western National's alternative argument under subsection 5—that it did not fail to affirm or deny coverage—was not made in response to an argument raised in Willis's response brief. It would be improper, therefore, for the Court to entertain this argument, let alone grant summary judgment because of it.

It is also apparent that in drafting § 33-18-242 (2021), the Montana Legislature was intentional in its distinction between claims asserted by an insured and a third party. The statute specifies in subsections (3) and (6), for example, what claims may be brought by an insured in addition to claims under the UTPA; under subsection (6)(b), it provides for different conditions precedent for asserting an action under the statute for a third-party claimant; and in subsection (7), it specifies different periods of limitations for claims by an insured and third-party claimant. Thus, the fact that the statute provides that both an insured and a third-party claimant have a cause of action for violation of subsection (5), without distinction or limitation, supports the conclusion that the provision is not limited to an insured.

Western National's citation to *Cranska v. UMIA Insurance, Inc.*, 709 F. Supp. 3d 1200 (D. Mont. 2024) in support of its position is similarly unavailing. (Doc. 37 at 26.) In *Cranska*, the insurer contended that subsection 5 did not apply to the plaintiff's third-party claim and the plaintiff conceded he had no viable claim. 709 F. Supp. 3d at 1215. Why the plaintiff conceded summary judgment on the issue, and whether the concession was well-founded, is not apparent from the court's decision. Aside from noting the concession, the court did not analyze the issue further.[5]

---

[5] Additionally, Western National's purported quotation from *Cranska*—that

In its response brief, Willis argues it is entitled to summary judgment on its subsection 5 claim regarding the CMS conditional payments. (Doc. 48 at 27–28.) In order to grant summary judgment on this claim, however, the Court would have to agree with Willis's contention that the amount of time Western National took to respond to its proof of loss information was unreasonable. Here, reasonableness is not a legal question, but a factual determination dependent on several different factors. Accordingly, the Court cannot grant summary judgment in favor of Willis.

In sum, summary judgment is denied to both parties on Willis's subsection 5 claim.

### C. Common Law Bad Faith

Western National argues that Willis's common law bad faith claims are barred because they "do not identify a separate common law duty, and their common law bad faith claim is duplicative of their UTPA claims." (Doc. 37 at 28.) In support of this position, Western National cites to cases in which a plaintiff was precluded from maintaining two separate common law tort claims that arose from the same operative facts. (*Id.* at 28–29.) Western National also quotes Mont. Code Ann. § 1-1-108, which provides that "there is no common law in any case

---

"'Section (5) *does not apply to third party claims* seeking to recover tort damages from an insurer.'" *Cranska*, 709 F. Supp. 3d at 1215 (emphasis added)"—appears nowhere in the court's decision. (*See* Doc. 37 at 26.)

where the law is declared by statute."

In Montana, "[a] presumption exists against statutory preemption of common law claims." *Sunburst Sch. Dist. No. 2 v. Texaco, Inc.*, 165 P.3d 1079, 1091 (Mont. 2007). "A statute does not take away common law claims except to the extent that the statute expressly or by necessary implication declares." *Id.* Indeed, the Montana Supreme Court has explicitly held that the UTPA does not preclude a third-party claimant from bringing a common law bad faith claim. *Brewington v. Emps. Fire Ins. Co.*, 992 P.2d 237, 239–41 (Mont. 1999).

That Willis was not barred from bringing a common law bad faith claim in addition to UTPA claims when this action was filed in 2022 is further bolstered by the fact that, in 2023, the Montana Legislature specifically amended the UTPA to take away a third-party claimant's right to bring a bad faith claim against an insurer. Mont. Code Ann. § 33-18-242(4) (2025) ("A third-party claimant who has suffered damages as a result of the handling of an insurance claim may bring an action against the insurer for fraud or pursuant to this section, but not under any other theory or cause of action. A third-party claimant may not bring an action for bad faith in connection with the handling of an insurance claim."). Although the UTPA now contains clear language preempting third-party claimants from pursuing common law bad faith claims, no such statutory preemption existed when this case was filed in June 2022. If, as Western National contends, the UTPA

already preempted common law bad faith claims by third-party claimants, the Montana Legislature's recent statutory preclusion would be superfluous.

Western National's reliance on *Cranska* and *Brodowy v. Progressive Direct Insurance Company*, 2023 WL 5670003 (D. Mont. Sep. 1, 2023) is also misplaced. (Doc. 37 at 26, 29.) In both those cases, the court first found that the plaintiffs' UTPA claims failed as a matter of law, and then held that the plaintiffs' common law bad faith claims failed because they were based on the same conduct as the UTPA claims. *Cranska*, 709 F. Supp. 3d at 1215; *Brodowy*, 2003 WL 567003, at *10. The common law claims were not dismissed merely because they were duplicative of the UTPA claims, as Western National argues, but specifically because the Court determined that the common law claims lacked legal support for the same reasons the UTPA claims did. *Id.*

Whether Willis will ultimately prevail on their common law claims is not a determination the Court can make at this juncture. Instead, it is sufficient for the Court to find that Western National has failed to carry its burden on summary judgment of showing that it is entitled to judgment as a matter of law.

In conclusion, summary judgment is denied to Western National on all of Willis's claims.

/ / /

/ / /

## IV. CONCLUSION

Based on the foregoing, **IT IS HEREBY ORDERED** that:

1. Willis's motion for partial summary judgment (Doc. 25) as to Western National's affirmative defense of reasonable basis in law or fact is **GRANTED.**
2. Western National's cross-motion for partial summary judgment (Doc. 33) is **DENIED.**
3. Western National's motion for summary judgment (Doc. 36) is **DENIED.**

DATED this 3rd day of September, 2026.

TIMOTHY J. CAVAN
United States Magistrate Judge